Good morning, Your Honors. I'm Jeff Blank, representing the plaintiff and appellant, Jennifer Cooper. I'll try to reserve four or five minutes for rebuttal. I just want to state that at the beginning of this trial, I guess I should have seen the writing on the wall, because during jury selection at a sidebar, the judge, we were over talking to the judge and he unsolicitedly stated to me, I find Title VII to be unconstitutional. I knew I was going to have a problem at trial with that statement. I found that statement, and it turned out to come true. There were motions to go to the facts. Yes. Just to make sure I understand. On March the 8th, 2007, there was the oral complaint your client made against Mr. Peacock, and he was disciplined. Was there ever any discipline after that? I had trouble following that in the record, because the record would talk about his counseling or his apology much later. Was there ever any discipline after that? No. And that was part of the issue that Ms. Cooper testified to and Ms. Compton and Mr. Anderson. After that March verbal written reprimand, his behavior continued. Ms. Martinovich, the director, received the investigative report in November. So from March to November, his actions continued. She got the report in November, and she never took discipline. And that was one of the issues on the impeachment issue. Originally, she stated, I disciplined him after I got the report. No, she didn't. The only discipline was back in March. So after the report came out and the behavior continued, there was no discipline. And the behavior continued until March of the following year when he did make the apology. And there was disputed evidence as to what did he say in the apology that should have gone to the jury. In other words, Ms. Cooper and others testified that he said, oh, I'm sorry for making it terrible, abusive, and all this behavior. Now, the record does reflect that apology. Was there ever any discipline? No. None whatsoever. And that's why the record doesn't refer to any. And Ms. Cooper's issue was, nobody's doing anything. No matter how many times I went to Mr. Taylor or tried to go to other bosses to say, let's stop the abuse, it didn't happen. And the big issue here is that day in trial when the judge came out and said he's going to dismiss Mr. Peacock on his own motion. In other words, there was never any argument from defense counsel supporting a motion to dismiss after plaintiff's case. They made a 41B motion, which was puzzling because that means failure to bring to trial. The next day, the judge comes back and says, I'm granting the 50A motion, and here's why. Never an opportunity to oppose that, which is required in Summers v. Delta Airlines decided by this court. In other words, before you do something that drastic, you've got to hear the parties. He didn't hear anything. Now, since this order came out, the Supreme Court decided Vance v. Ball State University regarding who is an employer, and it's somebody who has the authority to take tangible employment actions against the victim. I know that wasn't an issue that was being considered in your case, at least it's not in the briefing. But was there any evidence in the record that Peacock did have the authority to take such an action? Hiring, firing, failing to promote or reassignment? Yes, because after Ms. Cooper complained around March 8th, eight days, six or eight days later, Mr. Cooper has made her supervisor. As her supervisor for four months, he had the ability, and he did, refuse her work assignments, kept her, made other comments, other abuse. That's not something the Supreme Court contemplated as tangible employment action. They had a working relationship, affecting workflow. Workflow, what I was looking at when the trial came up was Ray V. Henderson. In that case, which was directly on point here, is saying Mr. Henderson complained about the mistreatment of women, and after that, there was a hostile work environment created. That was the retaliation motive. In other words, I don't think termination, even under Vance, is the requirement now. And if we go back to trial, I mean, obviously we'll focus on that, because it didn't happen at the time, as well as the Supreme Court's decision on but for retaliation causation. Let me make sure I understand the record. The way I understand the record, there were only three-and-a-half months, three to four months, that Mr. Peacock had, was her supervisor, is that correct? Correct. Okay. And I thought that the record reflected that during that period of time, she got fewer work assignments, and she had fewer work assignments. And her training stopped during that period of time, and that she was left out of any communication, and she got reduced, reduced tasks, preventing her from ever getting a promotion or maintaining her present position. Was that her position? Do I understand it correctly? Yes, ma'am. That is correct. But the four-month period that she was in was the period in which, in those four months, what happened and continued after that, as far as how was she being treated after she made the complaint. In other words, she complained pursuant to Title VII, you want to encourage people to raise complaints and not be retaliated against. And that form of retaliation was Mr. Peacock's action, talking about Darren Mack, who was the wanted man. Well, we're only looking at that four-month period, though, right? Because we're only looking at whether Peacock, as supervisor, was retaliating on account of her protected activity. Isn't that right? No, because following Ray V. Henderson, co-worker, and he was always in a super – he was a level above her. You know, she was a two and he was a three. So when he was removed as her direct supervisor, his harassment of her and the hostility continued, even though he wasn't her direct supervisor. That's what she was complaining about, and saying this has to stop. Counsel, this – I will say the district court's judgment was very hard to follow. After the case in chief, your case in chief, the district court stated that no conduct alleged by Peacock, that Peacock was not in a position to retaliate on behalf of the district court. It stated that Cooper had failed to provide – to prove hostile workplace. And then after the close, dismissed the case and talked about Peacock's intent. I had trouble following. This is where I came out. So tell me if you are – if I'm incorrect. As to Mr. Peacock, there is a claim for lack of training during that three-and-a-half-month period, and retaliation in work assignments, and going directly to her employment. Am I okay there? Yes. Then for one year, because that year would have to end in March 08, for one year there is an allegation of a hostile work environment, not because he was her supervisor, but because he was creating the hostile work environment she had to work in during that year, and that the retaliation was the creation of the hostile work environment. And that those were the two claims before the district court. Am I right? Yes, that's correct. And what happened was, instead of letting that go to the jury, and you know, there were credibility issues, there were issues of, you know, is it sufficient or not, and the court just on its own said, well, I don't think there's enough evidence here to support that, even though there was all this evidence in the hostile work environment, that claim, there was a multitude of evidence, you know, blocking her access. Gray says that the hostile work environment has to be sufficiently severe or pervasive to alter the conditions of the victim's employment. And so the district court presumably determined that as a matter of law, the incidents blocking her door and talking about this criminal was not, didn't rise to that level. What support do you have to say that would rise to what a level described in Ray of sufficiently severe or pervasive to alter the conditions of the employment? I looked at Ray directly. And in Ray, the court, this Court stated that after Ray made his complaint, his supervisors regularly, they yelled at him at staff meetings, they called him a liar or a troublemaker or a rabble-rouser and told him to shut up and subjected him to pranks and made false accusations. What I have here is we have, the Court was overly fixated on, there was no sexual misconduct, but there was, because once a week, Cooper testified, she'd have to squeeze by him in the doorway and rub her body against him. You know, the comments about the criminal were ongoing. The threats and how she felt insecure were verified by her, Ms. Compton, as well as the investigator. So all those things, I think, are more than what was in Ray to say it altered her environment, that she went to work in fear of this man for a period of a year, unable to quit or leave because she's supporting her family, I mean, she had no alternative, and trying to complain to the supervisors to get them to do something, and nobody did. And what changed eventually was he apologized in that March and said, I'm sorry for everything I've done. And then it stopped for that, you know, from that period of time forward. You know, does it pose a problem for you that most of the complaints of the activities of one individual, she's one individual, there's another individual who creates problems for her, but don't we have to look beyond that to see who's sanctioning it or if anybody is sanctioning it, or whether she had some recourse? Yes. And she complained to Mr. Taylor, and also Mr. Anderson, her supervisor, Anderson confirmed. He says, I think he's retaliating. He's told me he's trying to get rid of you, and I don't think what he's doing is appropriate. And he was at the same level as Peacock and was her supervisor. Does that go for you or against you? That's for because he's trying to do something, but his boss, Mr. Taylor, that can actually Peacock and Anderson were equals. Taylor's the one that can take action against Mr. Peacock to say don't do this. Anderson spoke up even. Nobody's doing anything. Let me do it without code. Is the fact that there's one person harassing and who continues to harass no matter what sufficient to say that there is a hostile work environment? When you're talking about one person. In the facts in this case, I would say yes, because Ms. Compton testified. That has to be your position that there's one person who can do it. He can do it, and he did it to women. He did it to her, to Ms. Compton. It wasn't just one-on-one. The other, and I reserve it. What is his record? Do we see that he did it generally to everybody? Ms. Compton testified first as to how he treated and mistreated her, brought her to tears, calling her names, incompetent. And that's one of the things that Ms. Cooper brought to the attention, saying you shouldn't be yelling and screaming at your employees and calling them names where everybody can hear that, reducing them to tears. You see, that's the point. Well, maybe it's the point. Somebody was doing something to her. I gather this record clearly shows. She made complaints. There were attempts to ameliorate it. So how do we say that's the company doing it when this record shows there's one person doing it? Do you see what I'm saying? I understand. There were no attempts to ameliorate after the March letter. That's the problem. Mr. Taylor, Ms. Martinovich, nobody did anything. And just briefly, and I'll reserve the remaining time, was the inadmissibility of the investigative report. I think the Court was dead wrong. He used F.R. Rule of Evidence 8038 as a public record. It's a business record exception. It's reliable. Even if the Court had been wrong on the technical evidentiary rule, almost all of those people mentioned in the Court in the report actually testified at trial, and the Court permitted the report to be used to cross-examine any of those people. I think seven of the nine testified. He did not permit me to use it to refresh a recollection of one of those people. To impeach. No, just to refresh a recollection. He said I could only impeach, but the law allows me to do it to refresh recollection as well. And he wouldn't do that. And then the impeachment instruction. But we can see why he wouldn't do that, because the report contained, I think you would admit, the report contained facts and, you know, it contained a lot that would be. But for refreshing recollection, inadmissible evidence is allowed to use to refresh recollection. Sotomayor's counsel, you could use that to cross-examine a witness, to impeach the witness. And by that, I mean, well, didn't on so-and-so you say that the car was blue? Now you're leaving that out. Wasn't the car blue? And you could use statements that were omitted not to refresh the witness's recollection. Correct. But my witness, I couldn't use it to recollect. I'll try to reserve. I have very little time left. Thank you. We'll give you a minute. Thank you. Good morning, Your Honor. May it please the Court. My name is David Keene, and I represent the State of Nevada in this matter. We're here this morning to consider three separate issues. The first is whether Ms. Jennifer Cooper should be granted a new trial following a jury verdict on the basis of a pretrial decision to exclude the investigatory report, except for the purpose of refreshing recollection or impeachment. Also, to decide whether the trial court properly dismissed the retaliation claim against Mr. Peacock. And third, whether an appellant was improperly denied an impeachment instruction. The first issue to consider is the ---- Let's go to the second issue. That was the one that we spent the most time on. And during the one-year period of time when Mr. Peacock was in the office, and wasn't from more than one individual regarding what he did and what he talked about. Yes, there was, Your Honor. There was testimony from more than one individual regarding that. However, the key testimony in that, in there, is that of Ms. Cooper, the plaintiff, where she testified that none of what Mr. Peacock had to say was on the basis of her sex, which is an element of her hostile work environment claim. She was asked several times, and I believe the transcript is at page 368, if the basis for what Mr. Peacock was doing was any way related to sex. Her answer to that ---- But when he blocked away, if he did, the allegation is that he did, that she had to squeeze against his body in order to get by, somebody could say, well, that had some sexual overtones. But other witnesses testified as to the rabbit-Warren-like nature of this work environment filled with cubicles and where everybody had to squeeze past everyone to get by. It wasn't just the women having to get past Mr. Cooper. I'm sorry, go ahead now. Just ---- but didn't ---- wasn't Mr. Peacock overheard constantly idolizing who killed his wife and shot a judge? And couldn't the jury have inferred that he was idolizing the man for doing that to the woman, and that he constantly said that women's place was not in the workplace? Wasn't that testified to? That's partially accurate, Your Honor. Mr. Peacock did mention occasionally his admiration for this individual who killed his ex-wife. However, at no point was that testimony ever tied together with any indication of a hostile work environment. Could I just ask you for a second? I mean, she wasn't making a stand-alone hostile, she might have been, but we're not looking at a stand-alone hostile work environment claim, right? We're looking at retaliation by means of a hostile work environment. Does that need to have a sexual element? I thought just the sorts of harassments that were described by opposing counsel and Ray being yelled at and the like, even if they wouldn't make a stand-alone claim, why isn't that sufficient for retaliation? Well, the element of retaliation has to be shown not only that this was done because of Her protected activity. Right, but it also is, it was done, there was some kind of adverse action. Their adverse action, the plaintiff claims, is the creation of a hostile work environment. Well, she also claims adverse action based on change in workflow and responsibility. And why under Burlington Northern, which sets a pretty low bar for adverse action, why wasn't that enough to be an adverse action under that standard? Well, first of all, Your Honor, that was only something that happened for a very brief period of time before Ms. Cooper was transferred to another supervisor. So it was for that three-and-a-half-month period, correct? Correct. And why isn't that enough? Well, I think in light of Vance v. Ball State, it's insufficient because when you consider that Peacock would not be her supervisor or not have the authority to take adverse action against her, whether it be termination or demotion or anything like that, the reduction in a few assignments by Peacock doesn't rise to the level of adverse actions. Whatever adverse actions may have occurred or were allegedly taken by Ms. Martinovich and Peacock's supervisor. I guess I'm confused because Vance is talking about was Peacock her supervisor. That's a supervisor standard. I don't read Vance as changing the Burlington Northern standard for what constitutes an adverse action. Well, I would still argue then that whatever Peacock is alleged to have done as far as training opportunities were de minimis and there's nothing to show that his denying her a few opportunities within a short period of time has had any long-term impact on her career. She wasn't denied a promotion because of it or a lateral or anything else. Whatever opportunity she may have missed out on for a brief period has had no adverse impact on the remainder of her career. So the standard is, as I read Burlington Northern, it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. So would the reduction, would you say that the reduction in work responsibility and training opportunities, does that meet that standard? Well, I would disagree factually that she was even denied certain things for a certain period of time. Ms. Cooper had multiple opportunities to engage in different things and some things she chose not to do. But going back to Burlington, I would still say that had she been denied a few opportunities, those minor, those few things would not be enough to dissuade a reasonable person from reporting what they consider to be. I thought she kept reporting it. I thought she kept talking to Taylor about it. And I thought throughout this period she would say he's continuing to do it basically. Am I wrong? I think she, her primary complaint was about Mr. Peacock and his alleged actions towards another female in the department. And this was That was the March 8th. That's, that is the complaint as I understand it, that she said she was retaliated against for making that complaint and that she was retaliated against for the following year. Then she said that the three and a half months he was her supervisor, he retaliated against her for making that March complaint. That's my understanding of the case. Is that right? I think that's accurate, Your Honor. So she said, I made the complaint on March 8th, 2007. I talked to Taylor, who was Peacock's supervisor, and I talked to Anderson, who was my supervisor. And Peacock was disciplined. Then she says Peacock became my supervisor. I complained about that. I complained about it to Anderson. I complained about it to Taylor, who was Peacock's supervisor. And they said that's the organizational chart. Then for three and a half months, he was her supervisor, and these events took place. And she continued to complain about those, having to squeeze through the cubicle door, having to, having him call women bitches, having him talk about how the former wife got what she deserved, and things like that. And she complained about it to Taylor, who was Peacock's supervisor. Then at the end of three and a half months, she had another supervisor, and that is Stanio. And so no longer was Peacock her supervisor. Then my understanding is her complaint is that the retaliation continued in the form of sexual harassment, and that she continued to complain. Is that your understanding of this case? Yes, it is, Your Honor. Thank you. It was difficult to sort it out. Well, tell me, your argument basically is that what she was complaining about did not rise to either retaliation for work assignments or retaliation for hostile work environment. Take each one of them and tell me why the conduct didn't rise to that level. Well, the complaining about, for example, the physically squeezing by Mr. Peacock, the testimony was that Mr. Peacock is a large man and that it was a very crowded work environment. Everybody had to squeeze around, everyone, to get through the cubicles there at NDOT, including men having to squeeze around Mr. Peacock because of the environment. So everybody was enduring that, not just women. Mr. Peacock's comments about the gentleman who shot his ex-wife and the judge were things said to everybody in the environment, not just to women. But that supports the conduct being in the environment, not just to ---- But it doesn't support the idea that he said anything because of sex. These were just comments he made, some random comments. I think a jury could have inferred that he was saying it was ---- didn't he say it was that divorced men, it was a good thing if they shot their wife? But there was never any tying his remarks to being on the ---- because of sex during the trial. There was no linkage between those things. What's the case that best supports your position that had those sorts of comments? So there's two items that opposing counsel noted. One was the discussion of Mac, Darren Mac, and the other was the squeezing behind the cubicle. So those were the two items that opposing counsel focused on. And so the question is, does that meet the standard in Ray for hostile work environment, alter the conditions of employment? What's the best case for you to support your position that it does not? I don't have a case citation in front of me, Your Honor. I'd be happy to provide that in a letter. So opposing counsel says in Ray he was yelled at, he was ---- pranks were played on him. There was ---- he was made a spectacle of at the meetings. And he says that's analogous to this situation. Well, that case came out before the Supreme Court's decision in Vance v. Ball State, which I think when you take that into consideration now, you'll see that Mr. Peacock is no longer a supervisor and that any of those incidents, the squeezing past and the comments and so forth. So her claims against, as I understand it, against the other supervisors, Taylor and Martinovich, are not before us on appeal. And so I guess I'm confused about what we're looking at for the period after Cooper was no longer her supervisor. And I don't believe that the State argued before the district court that he wasn't a supervisor as just defined in Vance. Well, Vance hadn't come out at that time, Your Honor. Okay, but you were not precluded from raising the argument, but I didn't see it in the record. So maybe that's something that was waived since not argued. But after he stopped being a supervisor, what is the nature of the claim that the State is responsible for Cooper's, Peacock's activities after he ceased to be a supervisor, and what's the, is that correctly before us? Well, I think that's what plaintiffs are arguing, is that whatever he did once the transition was made continued to be, you know, harassment. That's retaliation, continues to be retaliation on the part of the State, that the State is responsible for that. Well, I think that's what plaintiffs are arguing. And it's our position that after Ms. Cooper was removed from Mr. Peacock underneath the organizational chart, the only people who could have been affecting her retaliation-wise were Ms. Martinovich and Mr. Taylor. And that went to the jury, and it was found that there was no retaliation. So with respect to reducing her workflow and her training responsibilities, that ended after Peacock was no longer her supervisor. There was evidence that she was, things improved. With respect to the hostile work environment, though, that claim would continue. Is that correct? That's correct. And again, I would reiterate that there's nothing to indicate that anything that Mr. Peacock said was on the basis of sex, and Ms. Cooper herself testified to that. She was asked several questions in a row about his comments and why were they made and was there anything sexual about them, to which she answered every time, no. And your position is that even for a retaliation claim and retaliation due to a hostile work environment, the hostile work environment has to be sexual harassment. Is that your position? That's correct. To satisfy the requirement of the adverse action under a retaliation claim, when you're arguing that it's through a hostile work environment, you need to satisfy the elements of a hostile work environment claim, which Ms. Cooper failed to do. Thank you. In conclusion, I would ask that you reject Ms. Cooper's appeal and find that the trial court ruled correctly. I would ask you to affirm the trial court's decision and the jury's verdict in favor of the defense. Thank you. Thank you, Your Honors. Just to clarify, what the judge instructed the jury was you can only look at Mr. Taylor and Ms. Martinovich. You cannot consider anything regarding Mr. Peacock. He took everything Mr. Peacock did away from the jury. Everything was his instruction. Even though he was his supervisor, he stated, doesn't matter, you're only looking at Taylor and Martinovich, Peacock, and what he did you can't consider. And I think the court's hitting the nail on the head. Retaliation doesn't require sexual misconduct. Retaliation can come in many forms for a hostile work environment. And Ray's right on point and so is Burlington. Ray was a hostile work environment. It wasn't sex. The judge just said it had to be sexual and it doesn't. That's the wrong standard. And I'll submit on that. And thank you very much, Your Honors. Thank you. This case is submitted.
judges: Black, Farris, Ikuta